IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN PASSMORE, | ) | |
|     Plaintiff | ) | C.A. No. 12-90 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| JOSEPH IANNELLO, et al., | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural and Factual History

On April 2, 2012, Plaintiff John Passmore, a prisoner formerly incarcerated[2] at the Erie County Prison in Erie, Pennsylvania ("ECP"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Joseph Iannello ("Iannello"), corporal at ECP; James S. Veshecco ("Veshecco"), Warden at ECP; and Michael Holman ("Holman"), Deputy Warden at ECP.

Plaintiff alleges that on February 23, 2011, while he was temporarily housed in the

---

[1] The parties have consented to the United States Magistrate Judge's exercise of jurisdiction over this matter. [ECF Nos. 6, 19].

[2] Plaintiff is presently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania. (ECF No. 3, Complaint, ¶ 3).

restricted housing unit ("RHU") at ECP "for a legal matter," he was ordered by a corrections officer to take a "mandatory shower" pursuant to an ECP policy that required RHU inmates to shower on Mondays, Wednesdays, and Fridays. (ECF No. 3, Complaint, at ¶¶ 11-14). Plaintiff alleges that he refused the "mandatory shower" because he was not feeling well and had taken a shower the previous day. (Id. at ¶15). Later the same day, Defendant Iannello and another corrections officer went to Plaintiff's cell and again ordered him to take a "mandatory shower." (Id. at ¶¶ 18-19). Once again, Plaintiff explained that he was not feeling well and had taken a shower the previous day. (Id. at ¶ 20). Plaintiff alleges that "next, without warning, corporal, Defendant Iannello, hit Plaintiff with several long shots of continuous pepper spray all over the Plaintiff's body." (Id. at ¶ 21). The pepper spray entered Plaintiff's cell through the door wicket. (Id. at ¶ 22). At the time, Plaintiff alleges that he was wearing only "prison issued shorts with no underwear," and, as a result, the pepper spray contacted his "face, eyes, hair, scalp, chest, shoulders, neck, arms, legs, genitals, buttocks, and numerous other parts of Plaintiff's body which were also exposed." (Id. at ¶¶ 23-24).

Soon after being pepper sprayed, Plaintiff experienced severe burning on the body parts that were contacted by the spray, and he felt like he was suffocating from lack of air. (Id. at ¶¶ 27, 29). Plaintiff alleges that he panicked and began banging on his cell door, but no staff came to his aide. Id. at ¶ 30). Plaintiff then attempted to use the sink in his cell to splash water on his burning body parts, but there was no water in his cell. (Id. at ¶ 31). Plaintiff hit the call button in his cell and asked the RHU officers in the "bubble room" why his cell water was off. The officers responded that "whenever the extraction team is called all water is shut off on the unit."

2

(Id. at ¶¶ 32-33). Plaintiff alleges that the RHU officers ignored his pleas for water and refused to turn the water on in his cell. (Id. at ¶ 36). Plaintiff then asked for a nurse and was told that the nurse would no;t arrive until the extraction team came to get him from his cell. (Id. at ¶¶ 37-38). According to Plaintiff, the extraction team did not arrive at his cell until "20 minutes or more" had passed since he was pepper sprayed. (Id. at ¶ 39). While waiting for the extraction team, Plaintiff alleges that he could not rinse the pepper spray from his eyes or body because he was without water, and he suffered "being completely blind, burning all over his body, Plaintiff could barely breathe, and intense pain all over." (Id. at ¶¶ 40-44).

After the alleged waiting period of "20 minutes or more," the extraction team removed Plaintiff from his cell and took him to a "secluded location," where Plaintiff was placed in a shower and a nurse put solution in his eyes. (Id. at ¶¶ 48-50). He was later returned to the same cell. (Id. at ¶ 52). Plaintiff claims that, as a result of the pepper spraying, he sustained injuries, including "no clear vision," burning and red skin on various parts of his body, breathing difficulty, and "severe pain all over his body." (Id. at ¶ 53). He alleges that he could not see well for days after the incident, and he suffered from painful urination for several days. (Id. at ¶¶ 54-55). Plaintiff alleges that he put in three sick call slips at ECP for his injuries, but was only seen once by a nurse, who put saline solution in his eyes and told him she could do nothing for the rest of his injuries. (Id. at ¶ 56). Plaintiff was never seen or treated by any doctor or physician at ECP for the alleged injuries he suffered as a result of the incident of February 23, 2011. (Id. at ¶ 77).

Plaintiff claims that Defendant Iannello's alleged actions violated his Eighth Amendment right to be free from cruel and unusual punishment, as well as his rights under the Fourth, and

3

Fourteenth Amendments. In addition, Plaintiff claims that Defendants Veshecco and Holman violated his Fourth, Eighth and Fourteenth Amendment rights "by upholding a policy and creating a policy that allowed their subordinate Defendant Iannello to use force by pepper spraying Plaintiff … for refusing a shower." (Id. at ¶¶ 151-153). Plaintiff also claims that he was denied medical treatment after the alleged assault in violation of his Eight Amendment rights. (Id. at ¶ 154). As relief for his claims, Plaintiff seeks declaratory and injunctive relief, and monetary damages.

On August 7, 2012, Defendants filed a motion to dismiss [ECF No. 15], arguing that (i) Plaintiff's claims are frivolous because Plaintiff cannot show that he suffered any more than *de minimis* injuries; (ii) Plaintiff has failed to state a claim upon which relief may be granted; (iii) Plaintiff's claims of supervisory liability against Defendants Veshecco and Holman should be dismissed because he has failed to allege their personal involvement in the complained-of misconduct; (iv) Plaintiff has not shown outrageous conduct that would justify an award of punitive damages; (v) Plaintiff's claim for injunctive relief should be dismissed as moot; and (v) Defendants are entitled to qualified immunity. Plaintiff has filed a brief in opposition to Defendants' motion [ECF Nos. 25); however, because Defendants submitted a number of exhibits with their motion that this Court will consider, this Court issued an Order on January 8, 2013, advising the parties that Defendants' motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and providing Plaintiff additional time to supplement his response accordingly, if he so chose. This additional time period has now passed and Plaintiff has not filed a supplement in opposition to summary

4

judgment. This matter is now ripe for consideration.

### B. Standard of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Excessive Use of Force Claim

Plaintiff claims that Defendants used excessive force against him in violation of his Fourth, Eighth and Fourteenth Amendment rights. To the extent Plaintiff claims Defendants used excessive force in violation of the Fourth Amendment, the Supreme Court has proclaimed

7

that the Fourth Amendment applies to "[a]ll claims that law enforcement officers have used excessive force - deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen …." Graham v. Connor, 490 U.S. 386, 95 (1989); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 277 (3d Cir.1990). Such is not the case here, however, as Plaintiff was not a "free citizen" at the time of the incidents in question. As a result, Plaintiff's claim of excessive use of force under the Fourth Amendment is inappropriate and will be summarily dismissed.

The question of whether Plaintiff's excessive use of force claim is properly brought under the Eighth or Fourteenth Amendment depends upon Plaintiff's institutional status at the time of the incident at issue. If Plaintiff was a pretrial detainee at the time of the incident, his excessive use of force claim would be treated as a due process claim under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-539 (1979) (holding that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment). If, however, Plaintiff was not a pretrial detainee but was, rather, a convicted and sentenced inmate awaiting transfer to a state correctional institution, his excessive use of force claim would be governed by the Eighth Amendment. See Whitley v. Albers, 475 U.S. 312, 327 (1986). Nonetheless, as a practical matter, the Third Circuit has determined that a § 1983 excessive use of force claim brought by a pretrial detainee under the Fourteenth Amendment Due Process Clause should be analyzed under the same standard as an excessive use of force claim brought under the Eighth Amendment. Fuentes, 206 F.3d at 346-47. Thus, Plaintiff's Fourteenth Amendment claim is essentially subsumed by his Eighth Amendment claim in any event.

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley, 475 U.S. at 321.

Defendants assert initially that Plaintiff's excessive use of force claim is frivolous because Plaintiff cannot show that he suffered any more than *de minimis* injuries as a result of the incident at issue. The Court disagrees. Plaintiff has alleged that immediately after he was pepper sprayed he suffered "severe" pain and burning over various parts of his body, loss of breath, and temporary blindness, and that he continued to suffer diminished eyesight and painful urination for days after the incident in question. Based on these allegations, which are not contradicted by any evidence of record, the Court finds that Plaintiff suffered moderate injuries, some of which lasted a few days.

Nonetheless, although "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," Hudson v. McMillian, 503 U.S. 1, 7 (1992)(internal quotation marks omitted), it is not the deciding factor on whether an excessive force claim is legally sufficient. The Supreme Court has recognized that the "core judicial inquiry" in reviewing an excessive force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a

9

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010), quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992). See also Smith v Mensinger, 293 F.3d 641, 648-49 (3d Cir. 2002)("the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries").

It has been held that "[t]he use of mace, tear gas or other chemical agents of the like nature when reasonably necessary … to subdue recalcitrant prisoners does not constitute cruel and inhumane punishment … and this is so whether the inmate is locked in his cell or is in handcuffs…. The use of the substance in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required." Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984)(citations omitted). See also Davis v Agosto, 89 Fed.Appx. 523 (6th Cir. 2004) (prison officials did not violate inmate's Eighth Amendment rights by spraying mace into his cell, where officer first ordered inmate to place his hands next to tray slot so that he could be handcuffed, but inmate refused and remained recalcitrant); Luciano v. Lindberg, 2012 WL 1642466 at *19 (M.D.Pa. My 10, 2012)(finding that use of pepper spray on inmate who refused direct orders to cuff up in order to be removed from his cell was both "necessary and the minimum amount needed" to accomplish the task of moving inmate to another cell); Redman v. Walton, 2007 WL 2406939 at *6 (W.D.Pa. Aug. 21, 2007)(holding that use of mace to subdue a prisoner during a cell extraction procedure could not be considered a violation of the prisoner's constitutional rights because the mace was applied in "a good-faith effort to maintain or restore

discipline").

Here, it is apparent that Defendant Iannello used pepper spray on Plaintiff only as a last resort after appropriate warnings were given and orders were repeatedly disobeyed. Plaintiff has, in fact, acknowledged that he refused multiple orders to take a "mandatory shower," as required by ECP's policy. (ECF No. 3, Complaint, at ¶¶ 15, 20). This acknowledgement is supported by the record evidence, which includes misconduct reports that were written by ECP corrections officers Robert Tome ("Tome") and William Niebling ("Niebling") on the date of the incident in question, as well as a Report of Extraordinary Occurrence that was authored by Defendant Iannello on the same date. (ECF No. 16-4 at pp. 1-2, 4-6). In particular, Tome reported that he gave two orders to Plaintiff to "step up to be cuffed for shower," but Plaintiff refused both orders, at which time Defendant Iannello was notified of the situation. (ECF No. 16-4 at p. 1). Niebling wrote that both he and Defendant Iannello were called to Plaintiff's cell after he refused to shower, at which time Niebling ordered Plaintiff four times "to come to the cell gate to be handcuffed," but Plaintiff refused all four orders. (ECF No. 16-4 at p. 2). Defendant Iannello reported that he then "stepped up to the cell door and gave Plaintiff three separate orders to step up to the gate for a shower," but Plaintiff "again refused all orders." (ECF No. 16-4 at p. 4). According to his report, Defendant Iannello then informed Plaintiff "if he didn't cuff up, that he would be sprayed with [pepper spray]," in response to which Plaintiff "stated that he was refusing to follow my orders." (Id.). Defendant Iannello then "administered two separate 2 second bursts of [pepper spray] to [Plaintiff's] facial area" and "exited the pod in order to form

11

an extraction team." (Id.).³

Based on the foregoing facts, which are undisputed, this Court finds that the pepper spray deployed by Defendant Iannello was "applied in a good-faith effort to maintain or restore discipline," and was not done "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Accordingly, summary judgment will be entered in favor of Defendants on Plaintiff's excessive use of force claim.

### 2. Eighth Amendment Medical Claim

Plaintiff complains that after he was pepper sprayed he was left in his cell to suffer the effects of the spray, with no running water to rinse his body and no medical attention, for "20 minutes or more" before the extraction team removed him from his cell. As a result, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

"In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.

---

³ It is worth noting that Plaintiff's misconduct records indicate that Plaintiff has had a long history of violent and recalcitrant behavior during his incarceration. (ECF No. 16-2).

1999). Deliberate indifference to a serious medical need[4] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

In this case, the Court sees no need to address whether Plaintiff had a serious medical need, as a lay person can readily recognize that an individual exposed to pepper spray is in need of some medical assistance to alleviate the effects of the spray. Instead, the question presented here is whether the lack of providing water and medical attention for "20 minutes or more" after the pepper spray was administered rises to the level of a constitutional violation. Plaintiff acknowledges that after he was extracted from his cell, he was immediately taken to a "secluded location" and placed in a shower and a nurse put solution in his eyes. Thus, Plaintiff received medical attention and was given the ability to wash the pepper spray from his body within a half hour or so after his exposure to the spray. Such circumstances pale in comparison to the facts presented in Foulk v. Charrier, 262 F.3d 687 (8th Cir. 2011), on which Plaintiff relies. In Foulk, a prisoner sprayed directly in the face with pepper spray was put into solitary confinement in a cell

---

[4] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

13

with no running water and only dry paper towels, and was not allowed to shower for at least two days. Under such circumstances, the Eighth Circuit Court found that the prisoner had stated an Eighth Amendment violation. That finding is not applicable here. Not only does the record in this case reflect that Plaintiff received medical attention shortly after being sprayed, he was also seen on two subsequent occasions by the prison nurse, who flushed his eyes with saline and advised him to take showers to wash off any remaining pepper spray. This is not deliberate indifference.

Based on the foregoing, summary judgment will be entered in favor of Defendants on Plaintiff's Eighth Amendment deliberate indifference claim.

### 3. Fourth Amendment Claim

Plaintiff alleges that Defendants Veshecco and Holman created and allowed a policy requiring inmates in special management units to shower at least three times a week, with mandatory showers on Mondays, Wednesdays and Fridays. Although not entirely clear, it appears that Plaintiff is making a claim that such a policy violated his privacy rights under the Fourth Amendment.[5] This claim is without merit.

In general, the United States Supreme Court has held that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell.

---

5

Plaintiff also asserts that such policy violated his Eighth Amendment rights because enforcement of the shower requirement precipitated the use of force by Defendant Iannello; however, the Court has already determined that Defendant Iannello's actions did not amount to an excessive use of force and, thus, the policy sought to be enforced

Hudson v. Palmer, 468 U.S. 517, 526 (1984)("society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell…"). While a number of courts have recognized a prisoner's limited right to bodily privacy under the Fourth Amendment, the cases in which such right has been recognized involved circumstances where the prisoner was required to shower or strip in the presence of opposite sex staff members. See, e.g., Hayes v. Marriott, 70 F.3d 1144, 1146 (10th Cir. 1995); Grummett v. Rushen, 779 F.2d 49, 494 (9th Cir. 1985); Forts v. Ward, 621 F.2d 1210, 1216 (2d Cir. 1980). Such circumstances are not cited by the Plaintiff in this case. Rather, Plaintiff simply argues that taking a shower is a matter of private personal choice which is infringed by ECP's policy requiring RHU prisoners to take showers every Monday, Wednesday and Friday. This claim is not cognizable and will be dismissed.

### 4. Fourteenth Amendment Due Process Claim

In Albright v. Oliver, 510 U.S. 266 (1994), the Supreme Court held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims" 510 U.S. at 273 (citation omitted). See also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under

---

by Defendant Iannello did not "precipitate" an Eighth Amendment violation.

the rubric of substantive due process"); and Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").

Here, Plaintiff's Fourteenth Amendment due process claim is based upon the same allegations as his Eighth Amendment claims of excessive force and deliberate indifference. (See ECF No. 25-1, Plaintiff's Opposition Brief, at pp. 13-17 (internal pp. 63-67)). As a result, Plaintiff's due process claim will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN PASSMORE, | ) | |
|     Plaintiff | ) | C.A. No. 12-90 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| JOSEPH IANNELLO, et al., | ) | |
|     Defendants. | ) | |

## ORDER

AND NOW, this 20<u>th</u> day of February, 2013,

IT IS HEREBY ORDERED that Defendants' motion to dismiss [ECF No. 15], herein treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, is GRANTED, and judgment is hereby entered in favor of Defendants on all claims.

The Clerk is directed to mark this case closed.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge